1  THOMAS P. BROWN (S.B. #182916)
   tbrown@omm.com
2  RANDALL W. EDWARDS (S.B. #179053)
   redwards@omm.com
3  O'MELVENY & MYERS LLP
   Two Embarcadero Center, 28th Floor
4  San Francisco, CA  94111-3823
   Telephone:  (415) 984-8700
5  Facsimile:   (415) 984-8701

6  Attorneys for Defendant
   Bill Me Later, Inc.
7

8            UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10                 WESTERN DIVISION

11

12  KYLE SAWYER, Individually and        Case No. CV-10-4461 SJO (JCGx)
    on behalf of all others similarly
13  situated,                            **DEFENDANT BILL ME LATER,
                                         INC.'S NOTICE OF MOTION AND
14                Plaintiff,             MOTION TO DISMISS
                                         COMPLAINT; MEMORANDUM OF
15        v.                             POINTS AND AUTHORITIES IN
                                         SUPPORT THEREOF**
16  BILL ME LATER, INC., EBAY
    INC., PAYPAL, INC., and              Hearing Date:  August 9, 2010
17  DOES 1-100,                          Time:          10:00 a.m.
                                         Dept:          Courtroom 1
18                Defendants.            Judge:         Hon. S. James Otero

19                                       Date Filed:    May 21, 2010

20

21

22

23

24

25

26

27

28

# NOTICE OF MOTION

**TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN that on August 9, 2010 at 10:00 a.m., or as soon thereafter as counsel may be heard on this matter, in the above-captioned Court, at 312 N. Spring St., Los Angeles, CA 90012, in Courtroom 1, Defendant Bill Me Later, Inc. will and hereby does move the Court to dismiss Plaintiff's class action complaint.  This motion is brought on the grounds that Plaintiff has failed to state a claim on which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Plaintiff fails to state a claim under Utah law, which governs this action pursuant to a choice of law provision to which he agreed.  But even if this Court declines to enforce the choice of law provision, Plaintiff's claims for usurious interest and improper late fees are preempted by the federal banking laws because they are, in reality, directed against the true lender—CIT Bank, which is a state-chartered, federally insured bank subject to the Federal Deposit Insurance Act, 12 U.S.C. § 1831d.  Plaintiff's UCL claim, premised on these preempted claims, likewise fails.  Plaintiff's remaining claim under the Consumer Legal Remedies Act also fails as a matter of law because that Act does not apply to extensions of credit and, regardless, Plaintiff has not alleged sufficient facts to support such a claim.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith, the Declaration of Thomas P. Brown and the exhibits thereto, the argument of counsel, and any other matters properly considered by the Court at the hearing on this motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on June 18, 2010.

Concurrently with this motion, Defendants Bill Me Later, Inc., eBay Inc. and PayPal, Inc. filed a Motion to Dismiss for Improper Venue or in the Alternative to Transfer Venue under Rule 12(b)(3).  If this Court grants that venue motion, it need

1   not reach this motion to dismiss.

2

3

4   Dated:  June 24, 2010                    O'MELVENY & MYERS LLP

5                                            By:   /s/ Thomas P. Brown
6                                                  Thomas P. Brown
                                             Attorneys for Defendant
7                                            BILL ME LATER, INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

INTRODUCTION ........................................................................................... 1

STATEMENT OF THE CASE ......................................................................... 2

    I.     THE PARTIES ................................................................................. 2

    II.    BILL ME LATER ......................................................................... 2

    III.   MR. SAWYER'S CLAIMS .......................................................... 4

LEGAL STANDARD ..................................................................................... 4

ARGUMENT .................................................................................................. 5

    I.     UNDER THE CONTRACTUAL CHOICE OF LAW
         PROVISION, UTAH LAW APPLIES AND MR. SAWYER
         FAILS TO STATE A CLAIM ....................................................... 5

        A.    The Choice of Law Provision Applies to Mr. Sawyer's
            Claims ................................................................................. 5

        B.    Under California Choice of Law Principles, Utah Law
            Governs ............................................................................... 5

            1.    Utah Has a Substantial Relationship to the Parties
                and Transaction at Issue in This Case ........................... 6

            2.    Mr. Sawyer Cannot Establish That Utah Law Is
                Contrary to Any Fundamental California Policy ............ 6

        C.    Mr. Sawyer Has Failed to Make Out Any Claim Under
            Utah Law ............................................................................ 7

    II.    EVEN ABSENT THE CHOICE OF LAW PROVISION, THE
         CLAIMS AGAINST BILL ME LATER MUST BE
         DISMISSED BECAUSE BILL ME LATER IS NOT A
         PROPER PARTY TO THIS ACTION ........................................... 8

        A.    Mr. Sawyer's Claims Arise Out of the Agreement ................... 8

        B.    The Agreement Identifies CIT Bank As the Real Party in
            Interest ............................................................................... 8

        C.    Nothing About CIT's Relationship with Bill Me Later
            Makes Bill Me Later an Appropriate Target of
            Mr. Sawyer's Claims .......................................................... 9

    III.   EVEN WITHOUT THE CHOICE-OF-LAW PROVISION,
         MR. SAWYER'S CHALLENGES TO TERMS IN AN
         AGREEMENT WITH AN OUT-OF-STATE BANK ARE
         BARRED BY CALIFORNIA LAW AND THE FEDERAL
         DEPOSIT INSURANCE ACT, 12 U.S.C. § 1831d ........................ 11

        A.    The Federal Banking Laws Preempt Mr. Sawyer's Claim
            for Recovery of Allegedly Usurious Interest Under
            California Law ................................................................... 11

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### TABLE OF CONTENTS
#### (continued)

Page

     1.    The Federal Deposit Insurance Act Allows CIT to Set Interest Rates Consistent with Utah Law, Which It Has .......................................................... 11

     2.    Mr. Sawyer Cannot Avoid Preemption by Omitting the True Lender from His Complaint ........................... 12

     3.    Payday Lending Cases Cannot Revive Mr. Sawyer's Claims ................................................. 15

  B.    Since Late Fees Constitute "Interest" Under the Federal Banking Laws, Mr. Sawyer's Breach of Contract Claim Is Likewise Preempted ................................................... 16

  C.    Since Mr. Sawyer's UCL Claim Is Premised on Preempted Claims, It Also Must Fail ......................... 16

IV.    UNDER CALIFORNIA LAW, MR. SAWYER'S CLRA CLAIM FAILS AS A MATTER OF LAW ........................ 18

CONCLUSION .................................................................... 20

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Am. Online, Inc. v. Superior Court,*
90 Cal. App. 4th 1, 108 Cal. Rptr. 2d 699 (2001) ................................ 7

*Ashcroft v. Iqbal,*
129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ......................................... 4

*Augustine v. FIA Card Servs., N.A.,*
485 F. Supp. 2d 1172 (E.D. Cal. 2007) .............................................. 18

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 127 S. Ct. 1955, 107 L. Ed. 2d 929 (2007) ............... 2, 4

*Beneficial Nat'l Bank v. Anderson,*
539 U.S. 1, 123 S. Ct. 2058, 156 L. Ed. 2d 1 (2003) ....................... 11

*Berry v. Am. Express Publ'g, Inc.,*
147 Cal. App. 4th 224, 54 Cal. Rptr. 3d 91 (2007) .......................... 18

*Brazil v. Dell Inc.,*
585 F. Supp. 2d 1158 (N.D. Cal. 2008) .............................................. 7

*Buckland v. Threshold Enters., Ltd.,*
155 Cal. App. 4th 798, 66 Cal. Rptr. 3d 543 (2007) ........................ 20

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,*
20 Cal. 4th 163, 83 Cal. Rptr. 2d 548 (1999) ................................... 17

*Consumer Solutions REO, LLC v. Hillery,*
658 F. Supp. 2d 1002 (N.D. Cal. 2009) ............................................ 18

*Cooper v. Pickett,*
137 F.3d 616 (9th Cir. 1997) .............................................................. 2

*Discover Bank v. Vaden,*
489 F.3d 594 (4th Cir. 2007), *rev'd on other grounds by*
*Vaden v. Discover Bank*, 129 S. Ct. 1262 (2009) ........... 10, 12, 13, 14, 15

*FDIC v. Lattimore Land Corp.,*
656 F.2d 139 (5th Cir. 1981) .............................................................. 9

*Flowers v. EZPawn Okla., Inc.,*
307 F. Supp. 2d 1191 (N.D. Okla. 2004) .................................. 3, 4, 15

*Greenwood Trust Co. v. Mass.,*
971 F.2d 818 (1st Cir. 1992) ............................................................ 12

*Hatfield v. Halifax, PLC,*
564 F.3d 1177 (9th Cir. 2009) ............................................................ 6

- iii -

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Late Fee & Over-Limit Fee Litig.*,
　528 F. Supp. 2d 953 (N.D. Cal. 2007)................................................. 17

*Kearns v. Ford Motor Co.*,
　567 F.3d 1120 (9th Cir. 2009) ........................................................... 19

*Krispin v. May Dep't Stores*,
　218 F.3d 919 (8th Cir. 2000)................................................... 9, 14, 15

*Mamot Feed Lot & Trucking v. Hobson*,
　539 F.3d 898 (8th Cir. 2008) ............................................................. 16

*Medimatch, Inc. v. Lucent Techs. Inc.*,
　120 F. Supp. 2d 842 (N.D. Cal. 2000).................................................. 7

*Melt Franchising, LLC v. PMI Enters., Inc.*,
　No. CV 08-4148, 2009 WL 32587 (C.D. Cal. Jan. 2, 2009)................. 7

*Nedlloyd Lines B.V. v. Superior Court*,
　3 Cal. 4th 459, 11 Cal. Rptr. 2d 330 (1992) ..................................... 5, 6

*Olvera v. Blitt & Gaines, P.C.*,
　431 F.3d 285 (7th Cir. 2005) ............................................................... 9

*Phipps v. FDIC*,
　417 F.3d 1006 (8th Cir. 2005) ............................................................. 9

*Smiley v. Citibank (S.D.), N.A.*,
　517 U.S. 735, 116 S. Ct. 1730, 135 L. Ed. 2d 25 (1996) ................... 16

*SPGGC, LLC v. Ayotte*,
　488 F.3d 525 (1st Cir. 2007) ......................................................... 10, 15

*Spiegler v. Home Depot U.S.A., Inc.*,
　552 F. Supp. 2d 1036 (C.D. Cal. 2008)............................................. 17

*Sprewell v. Golden State Warriors*,
　266 F.3d 979 (9th Cir. 2001)............................................................. 4, 8

*Stearns v. Select Comfort Retail Corp.*,
　No. 08-2746 JF, 2009 WL 1635931 (N.D. Cal. June 5, 2009) .......... 17

*Vaden v. Discover Bank*,
　129 S. Ct. 1262, 173 L. Ed. 2d 206 (2009) ................................... 10, 13

*Vess v. Ciba-Geigy Corp. USA*,
　317 F.3d 1097 (9th Cir. 2003)............................................................ 20

*Wash. Mut. Bank, FA v. Superior Court*,
　24 Cal. 4th 906, 103 Cal. Rptr. 2d 320 (2001) ................................. 5, 6

DEFENDANT BILL ME LATER'S
MOTION TO DISMISS
NO. CV-10-4461 SJO (JCGx)

1

2

## TABLE OF AUTHORITIES
### (continued)

**Page**

3   **STATUTES**

4   12 U.S.C. § 1831d...................................................................11, 12

5   12 U.S.C. § 1831d(a) ..................................................................12

6   12 U.S.C. § 24..............................................................................10

7   12 U.S.C. § 85..............................................................................11

8   12 U.S.C. § 86..............................................................................11

9   Cal. Civ. Code § 1671...............................................................4, 16

10   Cal. Civ. Code § 1751..................................................................7

11   Cal. Civ. Code § 1761(a) ...........................................................18

12   Cal. Civ. Code § 1761(b) ...........................................................18

13   Cal. Civ. Code § 1770(a) ...........................................................18

14   Cal. Civ. Code § 1780(a) ...........................................................19

15   Cal. Fin. Code § 1716.............................................................11, 12

16   Utah Code Ann. § 13-11-19(4)(a) ...............................................7

17   Utah Code Ann. § 15-1-1(1) .......................................................12

18   Utah Code Ann. § 70C-1-106 .....................................................16

19   Utah Code Ann. § 70C-2-102(1)(b) ...........................................16

20   **OTHER AUTHORITIES**

21   126 Cong. Rec. 6908 & 6900 (1980)..........................................12

22   Erika Brown, *Technology:  Credit Card Killer*, Forbes (Dec. 11, 2006)..................2

23   FDIC Credit Card Activities Manual ch. XIV, *available at*
     http://www.fdic.gov/regulations/examinations/credit_card/
24   ch14.html, last visited June 18, 2010 ........................................10

25   **RULES**

26   Fed. R. Civ. P. 8(a) .......................................................................4

27   Fed. R. Civ. P. 9(b) .....................................................................20

28

DEFENDANT BILL ME LATER'S
MOTION TO DISMISS
NO. CV-10-4461 SJO (JCGx)

1

2

**TABLE OF AUTHORITIES**
**(continued)**

3

Page

## REGULATIONS

4

12 C.F.R. § 7.4001(a) ............................................................................ 16

5

## CONSTITUTIONAL PROVISIONS

6

Cal. Const. art. XV, § 1 ........................................................................... 4

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT BILL ME LATER'S
MOTION TO DISMISS
NO. CV-10-4461 SJO (JCGx)

1  **MEMORANDUM OF POINTS AND AUTHORITIES**

2  **INTRODUCTION**

3      This case raises a simple question—whether Plaintiff may borrow money

4 from an out-of-state bank and then disavow the loan contract by invoking the

5 bank's relationship with a third party, Bill Me Later. The answer to this question is

6 plainly no.

7      Plaintiff admits that he borrowed money from CIT Bank, a bank chartered in

8 Utah. And he admits that the terms of his loan are legal under both Utah law and

9 California law so long as CIT is the "true lender" on the loan. But he claims that

10 California law relieves him of the obligation to pay the agreed-upon interest and

11 fees under his contract with CIT because of the relationship between CIT and Bill

12 Me Later. And, to be sure, Bill Me Later provides a suite of services in connection

13 with Plaintiff's loan, including signing merchants to accept payments generated on

14 the Bill Me Later network, servicing loans generated on the network, and

15 purchasing receivables on such loans. But, having already completed a round of

16 briefing on the issue in another federal court, Plaintiff has yet to provide a single

17 case, law, or regulation to support this proposition. Nor has he explained what

18 about the relationship between CIT and Bill Me Later needs to change to render

19 CIT the "true lender" on the loan that it extended to him.

20      In the end, Plaintiff's case reduces to a convenient omission. Although his

21 case originates with his contract with CIT, he has chosen to sue various third parties

22 to that arrangement: eBay Inc., PayPal, Inc., and Bill Me Later. He did so to try to

23 avoid the absolute defense, preemption, that blocks his claim. But because the

24 complaint challenges the substantive terms on which CIT extended him credit—*i.e.*,

25 the interest rate and late fees—preemption cannot be avoided. Under both

26 California law and the federal banking laws, CIT is allowed to charge California

27 consumers the interest rates and late fees allowed by the law of its home state, Utah.

28 Even the choice of law provision in Mr. Sawyer's Account Agreement requires the

DEFENDANT BILL ME LATER'S
MOTION TO DISMISS
NO. CV-10-4461 SJO (JCGx)

application of Utah law.  And, of course, the challenged rates and fees are allowed by Utah law.  Mr. Sawyer cannot avoid this fact by miscasting this as an action against Bill Me Later, PayPal and eBay.

## STATEMENT OF THE CASE

### I.    THE PARTIES

Bill Me Later, Inc. is a subsidiary of eBay, Inc. and is headquartered in Timonium, Maryland.  (D.E. No. 5, Ex. 6 ("Compl.") ¶ 11.)  Plaintiff Kyle Sawyer is an individual from California who claims he used Bill Me Later in October 2008 to obtain a loan funded by CIT Bank to purchase a $1,068.08 computer from Cyberpower, Inc.  (*Id.* ¶¶ 10, 58.)  Defendants eBay Inc. and PayPal, Inc. are both headquartered in San Jose, California.  (*Id.* ¶¶ 12-13.)

### II.   BILL ME LATER

Bill Me Later's service provides consumers with a quick and secure alternative to credit cards for purchases made on the internet or over the phone. (Compl. ¶ 1; Ex. A to Brown Decl. ¶ 2 (Agreement),[1] at 3-4; *see also* Ex. B to Brown Decl. ¶ 3 (Erika Brown, *Technology:  Credit Card Killer*, Forbes (Dec. 11, 2006)).)  Like Visa or MasterCard, Bill Me Later forms relationships with participating merchants and facilitates consumer loans from a bank (CIT Bank ("CIT")) to pay for purchases from those merchants.  As with the payment services offered by Visa and MasterCard, participation by federal or state chartered institutions is critical.  By working with a chartered institution, Bill Me Later can ensure that its users have access to the same credit terms and conditions anywhere in the country.

To use Bill Me Later, the consumer simply enters the last four digits of his

---

[1]  Because Mr. Sawyer referred to the Terms and Conditions of the Bill Me Later Payment System in his Complaint, it is appropriate to attach the entire Agreement to this motion for the Court's consideration.  *See, e.g., Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 n.13 (2007); *Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1997) ("[A] document is not 'outside' the complaint if the complaint specifically refers to the document and if its authenticity is not questioned.").

DEFENDANT BILL ME LATER'S
MOTION TO DISMISS
NO. CV-10-4461 SJO (JCGx)

1    social security number and date of birth, and agrees to the Terms and Conditions

2    ("Agreement").  (*Id.* ¶ 5; Ex. A to Brown Decl. ¶ 2, at 1, 3.)  All loans are

3    contingent on the review and acceptance of the Agreement.  (*Id.*)  The Agreement

4    contains the following choice of law provision:

5           I agree that the provisions of this Agreement relating to interest,

6           charges and fees shall be governed by federal law and construed in

7           accordance with federal law and, as made applicable by federal law,

8           the law of the state of Utah.  Other terms and provisions shall be

9           governed by and construed in accordance with the law of the state of

10          Utah . . . .

11   (Ex. A to Brown Decl. ¶ 2, at 9.)  After the applicant accepts the Agreement, Bill

12   Me Later's credit approval system determines whether the applicant meets the

13   criteria for a CIT loan.  (Compl. ¶ 5; *see also* Ex. B to Brown Decl. ¶ 3.)  If the

14   application is approved, CIT extends credit to the consumer, funds the loan, and

15   pays the merchant on the consumer's behalf.  (Compl. ¶¶ 5, 50; Ex. A to Brown

16   Decl. ¶ 2, at 5.)

17          The loans CIT offers for use on the Bill Me Later network have nothing in

18   common with payday loans.  Bill Me Later, on behalf of CIT, conducts a detailed

19   credit check of each applicant, to ensure that CIT extends credit only to

20   creditworthy applicants.  (*See, e.g.*, Compl. ¶¶ 41, 49.)  The credit that CIT offers

21   typically serves as an alternative for consumers with relatively good credit, rather

22   than a source of credit for people with no alternative.[2]  (*Id.* ¶ 57.)  And as

23   Mr. Sawyer admits, the majority of CIT's customers pay off their balance within

24   30 days, meaning that they pay nothing to use the service.  (*Id.*)  In contrast, payday

25

26   _____

27   [2]  This is clear from the decision cited in Mr. Sawyer's complaint: *Flowers v.
     EZPawn Okla., Inc.*, 307 F. Supp. 2d 1191, 1205 (N.D. Okla. 2004) (payday loans
     targeted toward borrowers in working class and low-income communities across

28   the state).

DEFENDANT BILL ME LATER'S
MOTION TO DISMISS
NO. CV-10-4461 SJO (JCGx)

1  loans typically require an up-front, non-refundable finance charge.[3]

2  ### III.   MR. SAWYER'S CLAIMS

3  Mr. Sawyer does not allege that the interest rate and late fees assessed on his

4  Bill Me Later account exceed any limit imposed by Utah law, but instead brings his

5  claims under California law.  Mr. Sawyer alleges that the late fees are void as

6  unauthorized penalties under California Civil Code section 1671, and that the

7  interest rate violates California's usury law, Section 1 of Article XV of the

8  California Constitution.  (Compl. ¶¶ 71-74, 78-83.)  Mr. Sawyer asserts that these

9  violations also constitute "unlawful" and "unfair" business practices under

10  California's Unfair Competition Law ("UCL") and violate the Consumers Legal

11  Remedies Act ("CLRA").  (*Id.* ¶¶ 1, 75-77, 84-95.)

12  ### LEGAL STANDARD

13  The Federal Rules of Civil Procedure require "a short and plain statement of

14  the claim showing that [plaintiff] is entitled to relief."  Fed. R. Civ. P. 8(a).  "[A]

15  plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires

16  more than labels and conclusions."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

17  (2007).  A formulaic recitation of the elements of the claims will not suffice, and

18  the court cannot assume the truth of conclusory allegations unsupported by facts.

19  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  The court also cannot assume the

20  truth of allegations contradicted by facts contained in exhibits or that are subject to

21  judicial notice.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.

22  2001).  If, after stripping the complaint of rhetoric and disregarding facts that

23  cannot be accepted as true, the facts alleged would not support a verdict for the

24  plaintiff, the complaint must be dismissed.

25

26

27  _____

[3] *See, e.g., Flowers*, 307 F. Supp. 2d at 1196 (plaintiff paid $63 finance charge for

28  a fourteen-day cash advance of $350).

DEFENDANT BILL ME LATER'S
MOTION TO DISMISS
NO. CV-10-4461 SJO (JCGx)

1

**ARGUMENT**

2    **I.    UNDER THE CONTRACTUAL CHOICE OF LAW PROVISION,
      UTAH LAW APPLIES AND MR. SAWYER FAILS TO STATE A**

3    **CLAIM**

4         All of Mr. Sawyer's claims arise out of the terms and representations

5    contained in the Agreement, which contains a choice of law provision requiring the

6    application of Utah law.  Since Mr. Sawyer states no claims under Utah law, his

7    complaint should be dismissed.

8         **A.    The Choice of Law Provision Applies to Mr. Sawyer's Claims**

9         Under California law, "a separate conflict of laws inquiry must be made with

10   respect to each issue in the case."  *Washington Mutual Bank, FA v. Superior Court*,

11   24 Cal. 4th 906, 920 (2001).  But when a party "enters into an agreement

12   establishing a transaction or relationship and provides that disputes arising from the

13   agreement shall be governed by the law of an identified jurisdiction, the logical

14   conclusion is that he or she intended that law to apply to *all* disputes arising out of

15   the transaction or relationship."  *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th

16   459, 469 (1992) (applied to consumer contracts of adhesion in *Washington Mutual*,

17   24 Cal. 4th at 906).  The choice of law provision states that Utah law governs all of

18   the terms and provisions of the Agreement, including the "interest, charges and

19   fees."  (Ex. A to Brown Decl. ¶ 2, at 9.)

20        Mr. Sawyer's alleged causes of action for breach of contract, violation of

21   California usury law, and violation of the California UCL directly challenge the

22   interest rates, charges and fees provided for under the Agreement.  (*See* Compl.

23   ¶¶ 71-74, 78-95.)  And Mr. Sawyer's CLRA claim alleges misrepresentations

24   directly related to the terms of the Agreement.  (*See id.* ¶¶ 75-77.)  Because these

25   disputes all "aris[e] out of the transaction or relationship" created by the

26   Agreement, the choice of law provision applies to all of them.

27        **B.    Under California Choice of Law Principles, Utah Law Governs**

28        "In determining the enforceability of a choice of law provision in a diversity

5

action, a federal court applies the choice of law rules of the forum state." *Hatfield v. Halifax, PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009). If the parties state their intention through an express choice of law provision, California courts will ordinarily enforce the provision. *Id.* (reversing refusal to enforce provision).

The proponent of the clause must "demonstrate[] that the chosen state has a substantial relationship to the parties or their transaction, or that a reasonable basis otherwise exists for the choice of law." *Wash. Mut.*, 24 Cal. 4th at 917 (citing *Nedlloyd*, 3 Cal. 4th at 465). Upon such a showing, the choice of law provision "generally will be enforced unless the other side can establish ***both*** that the chosen law is contrary to a fundamental policy of California ***and*** that California has a materially greater interest in the determination of the particular issue." *Id.* (emphasis added).

### 1. Utah Has a Substantial Relationship to the Parties and Transaction at Issue in This Case

The Agreement clearly establishes that Mr. Sawyer borrowed money from CIT, which is located and chartered in Salt Lake City, Utah. (Ex. C to Brown Decl. ¶ 4.) This action revolves around an Agreement executed in Utah and a loan made in Utah. (*See* Ex. A to Brown Decl. ¶ 2, at 9 ("This Agreement has been accepted by you in the state of Utah, and all loans will be extended by you in the state of Utah").) Therefore, Utah has a substantial relationship to the loan transaction and to the parties to the Agreement.

### 2. Mr. Sawyer Cannot Establish That Utah Law Is Contrary to Any Fundamental California Policy

Mr. Sawyer cannot avoid the choice of law provision because Utah law is not contrary to fundamental California policy and also because California does not have a materially greater interest in the determination of the particular issue. *Nedlloyd*, 3 Cal. 4th at 465.

Since choice of law provisions are generally enforced, courts have suggested

1  that such provisions can be avoided only when the chosen law is so offensive to

2  California public policy that it is "prejudicial to recognized standards of morality

3  and to the general interest of the citizens."  *Medimatch, Inc. v. Lucent Techs. Inc.*,

4  120 F. Supp. 2d 842, 862 (N.D. Cal. 2000); *accord Melt Franchising, LLC v. PMI*

5  *Enters., Inc.*, No. CV 08-4148, 2009 WL 32587 (C.D. Cal. Jan. 2, 2009).

6  Importantly, "[t]he mere fact that the chosen law provides greater or lesser

7  protection than California law, or that in a particular application the chosen law

8  would not provide protection while California law would, are not reasons for

9  applying California law."  *Medimatch*, 120 F. Supp. 2d at 862.

10      While the CLRA does contain a provision stating that "[a]ny waiver by a

11  consumer of the provisions of this title is contrary to public policy and shall be

12  unenforceable and void," Cal. Civ. Code § 1751, courts have only found that other

13  states' laws violated this fundamental policy on very limited grounds, *see, e.g.*, *Am.*

14  *Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 15 (2001).  In *America Online*,

15  the California Court of Appeal held that applying Virginia law would violate this

16  anti-waiver provision because Virginia law did not allow consumer protection suits

17  to proceed as class actions.  *Id.* at 16-17.

18      Here, by contrast, the Utah Consumer Sales Practice Act explicitly authorizes

19  consumer class actions.  Utah Code Ann. § 13-11-19(4)(a).  And where the chosen

20  law provides similar protection to those provided by the California UCL and

21  CLRA, courts will enforce the choice of law provision in favor of the chosen state's

22  law.  *See, e.g.*, *Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158, 1165-66 (N.D. Cal. 2008)

23  (holding that Texas law was not contrary to any policy under UCL or CLRA

24  because it provided "comparable protection").

25      **C.   Mr. Sawyer Has Failed to Make Out Any Claim Under Utah Law**

26      Because Utah law governs this action, and Mr. Sawyer does not state any

27  claims under Utah law, this Court should dismiss his claim for failure to state a

28  claim upon which relief can be granted.

7

1
2

## II.  EVEN ABSENT THE CHOICE OF LAW PROVISION, THE CLAIMS AGAINST BILL ME LATER MUST BE DISMISSED BECAUSE BILL ME LATER IS NOT A PROPER PARTY TO THIS ACTION

3
4
5
6
7

All of Mr. Sawyer's claims arise out of the terms and representations contained in the Agreement, which makes clear that CIT is the lender.  That Bill Me Later purchases the receivables on the loans (*i.e.*, that this is, as Mr. Sawyer claims, a "round-trip transaction") does not change this legal reality [or conclusion].  And neither would a finding that Bill Me Later acts as CIT's agent.[4]

8

### A.  Mr. Sawyer's Claims Arise Out of the Agreement

9
10
11
12
13
14
15
16
17
18
19
20

Each of Mr. Sawyer's claims are premised on the assertion that Bill Me Later structured a sham relationship with CIT to enable it to make loans with usurious interest rates and charge late fees that constitute improper liquidated damages penalties.  (*See, e.g.*, Compl. ¶¶ 1-9.)  But when the consumer opts to use Bill Me Later, the only representations made regarding the nature of the loan and the relationship between the consumer, Bill Me Later and CIT are contained in the Agreement.  In fact, the ten-page Agreement is the *only* document that the consumer must review and agree to before using the Bill Me Later service.  (Ex. A to Brown Decl. ¶ 2, at 1, 3.)  The Agreement sets the applicable interest rate and tiered late fees.  (*Id.* at 2-3.)  As such, Mr. Sawyer's challenge to the interest rates and late fees and the alleged subterfuge regarding the identity of the lender all arise out of the Agreement.

21

### B.  The Agreement Identifies CIT Bank As the Real Party in Interest

22
23
24

The facts reflected in the Agreement trump any inconsistent allegations in the complaint.  *Sprewell*, 266 F.3d at 988.  The first sentence of the Agreement states that Bill Me Later is a service "***offered through CIT Bank***, an industrial bank

25
26
27
28

---

[4]  This case presents a narrow legal issue of whether the relationship between Bill Me Later and CIT is structured so as to preserve the protections the banking laws provide CIT.  If the Court is inclined to deny this motion, Defendants believe that the case can be resolved on summary judgment with evidence regarding the relationship between Bill Me Later and CIT, provided through affidavits from those entities.  Discovery should likewise be limited to this issue.

DEFENDANT BILL ME LATER'S
MOTION TO DISMISS
NO. CV-10-4461 SJO (JCGx)

1   located in Salt Lake City, Utah ('the Lender')."  (Ex. A to Brown Decl. ¶ 2, at 1
2   (emphasis added).)  The parties to the agreement are defined to include CIT and the
3   borrower; Bill Me Later, along with the merchant, is specifically identified as one
4   of the "Other Parties" to the Agreement.  (Ex. A. to Brown Decl. ¶ 2, at 3.)  The
5   Agreement also clearly states that CIT is the party making the loan.  (*Id*.)  And even
6   Mr. Sawyer's complaint specifically identifies CIT as the party that extends credit
7   to consumers in connection with the Bill Me Later payments service:  "Bill Me
8   Later relies on CIT Bank to extend credit to Bill Me Later customers in order to
9   offer the Bill Me Later service" (Compl. ¶ 50); and "CIT Bank funds the consumer
10  loan at the point of sale and advances funds to the merchant" (*id*.).  CIT Bank is the
11  lender and, thus, the party in interest to any action challenging the terms and
12  conditions of the loan.

13         **C.**       <u>Nothing About CIT's Relationship with Bill Me Later Makes Bill</u>
14               <u>Me Later an Appropriate Target of Mr. Sawyer's Claims</u>

15      In determining whether federal banking laws preempt inconsistent state laws,
16  the identity of the originating entity (CIT) and not the assignee (Bill Me Later)
17  controls.  In *Krispin v. May Department Stores*, the court found that the store's (a
18  non-bank) purchase of the bank's loan receivables on a daily basis did not change
19  the fact that the bank was the true lender.  218 F.3d 919, 924 (8th Cir. 2000).
20  Simply put, the assignment of a loan, through purchase of the loan receivables or
21  otherwise, does not change the identity of the lender.  *Id*.; *see also Olvera v. Blitt &*
22  *Gaines, P.C.*, 431 F.3d 285, 289 (7th Cir. 2005) ("the common law puts the
23  assignee in the assignor's shoes, whatever the shoe size").  Nor does this fact
24  change the preemption analysis.  *FDIC v. Lattimore Land Corp*., 656 F.2d 139,
25  148-49 (5th Cir. 1981) ("[t]he non-usurious character of a note should not change
26  when the note changes hands"); *Phipps v. FDIC*, 417 F.3d 1006, 1013 (8th Cir.
27  2005) (borrower's state claims against subsequent purchaser of loan preempted by
28  the NBA to the same extent as claims against the loan originator would be).  As

DEFENDANT BILL ME LATER'S
MOTION TO DISMISS
NO. CV-10-4461 SJO (JCGx)

Mr. Sawyer admits, Bill Me Later does not purchase the loan receivables from CIT until after CIT funds the loan and advances those funds to the merchant.  (Compl. ¶¶ 12, 50.)  And even after Bill Me Later has purchased the receivables, CIT continues to own each customer account.  (*Id*. ¶ 50.)  Bill Me Later's purchase of the loan receivables simply does not change the identity of the lender.

Nor does the fact that CIT uses Bill Me Later as a loan servicer change CIT's position as the lender.  The banking laws allow banks to conduct their business through duly authorized agents.  12 U.S.C. § 24; *SPGGC, LLC v. Ayotte*, 488 F.3d 525, 532 (1st Cir. 2007).  And a bank does not subject itself to foreign state laws simply because it chooses to rely on third parties to, for example, send statements, process transactions and interact with customers.[5]  *Id*.; *Discover Bank v. Vaden*, 489 F.3d 594, 594 (4th Cir. 2007), *rev'd on other grounds by Vaden v. Discover Bank*, 129 S. Ct. 1262 (2009).  "It would be contrary to the language and intent of the [banking laws] to allow states to avoid preemption of their statutes simply by enacting laws that prohibited non-bank firms from providing national banks with the resources to carry out their banking activities."  *Ayotte*, 488 F.3d at 533.

**III.   <u>EVEN WITHOUT THE CHOICE-OF-LAW PROVISION, MR. SAWYER'S CHALLENGES TO TERMS IN AN AGREEMENT WITH AN OUT-OF-STATE BANK ARE BARRED BY CALIFORNIA LAW AND THE FEDERAL DEPOSIT INSURANCE ACT, 12 U.S.C. § 1831d</u>**

The national banking laws allow federal and state-chartered banks to charge

---

[5]  Mr. Sawyer's effort to use Bill Me Later's role as account servicer, network services provider and owner of receivables to subject CIT's contract to California law threatens to turn the consumer credit industry on its head.  The Federal Deposit Insurance Corporation ("FDIC") Examiner's Manual specifically addresses arrangements of the sort challenged here.  As the Manual explains, rent-a-BIN (bank identification number) arrangements allow non-banks to service credit cards accounts and accept the economic risk associated with those accounts.  As the FDIC recognizes, the non-bank generally purchases all of the account receivables and also manages and services those accounts and the customer relationship. (FDIC Credit Card Activities Manual ch. XIV, *available at* http://www.fdic.gov/regulations/examinations/credit_card/ch14.html, last visited June 18, 2010.)  Importantly, the "***bank is responsible*** for the [rent-a-BIN] program . . . ***regardless of where the receivables reside***."  (*Id*. (emphasis added).)

DEFENDANT BILL ME LATER'S
MOTION TO DISMISS
NO. CV-10-4461 SJO (JCGx)

1    the interest rates allowed in their home state regardless of the location of the

2    borrower.  As a state-chartered, federally insured bank, CIT is permitted to set the

3    terms of its loans pursuant to the laws of its home state, Utah.  Its relationship with

4    Bill Me Later does not change this.

5    **A.    The Federal Banking Laws Preempt Mr. Sawyer's Claim for Recovery of Allegedly Usurious Interest Under California Law**

6

7    The federal banking laws promote competition between federal and state-

8    chartered banks by allowing banks of both types to extend credit on terms allowed

9    by the law of their home state without facing prosecution under other states' usury

10   laws.  Federal law expressly preempts state usury law, meaning there is no such

11   thing as a foreign state usury action against such banks.  *See, e.g.*, *Beneficial Nat'l*

12   *Bank v. Anderson*, 539 U.S. 1, 10 (2003).  Even the California usury law

13   Mr. Sawyer invokes exempts such banks from its provisions.  *See* Cal. Fin. Code

14   § 1716.  His claims are therefore barred under California and federal law.

15   **1.    The Federal Deposit Insurance Act Allows CIT to Set Interest Rates Consistent with Utah Law, Which It Has**

16

17   CIT cannot be denied the protection of the federal banking laws through

18   Plaintiff's creative pleading.  The Federal Deposit Insurance Act, 12 U.S.C.

19   § 1831d ("FDIA"), allows CIT to set whatever interest rates and fees the state of

20   Utah permits and to export those interest rates and fees to other states.  The FDIA

21   provides state-chartered, federally insured institutions such as CIT with essentially

22   the same freedoms as institutions chartered under the National Banking Act, 12

23   U.S.C. §§ 85, 86 ("NBA").  The FDIA contains nearly the same language as the

24   NBA:

25   (a) <u>Interest rates</u>.  [T]o prevent discrimination against State-chartered

26   insured depository institutions . . . with respect to interest rates . . .

27   such State bank[s] . . . may, ***notwithstanding any State constitution or***

28   ***statute which is hereby preempted for the purposes of this section*** . . .

DEFENDANT BILL ME LATER'S
MOTION TO DISMISS
NO. CV-10-4461 SJO (JCGx)

1    charge on any loan . . . interest . . . *at the rate allowed by the laws of*

2    *the State, territory, or district where the bank is located* . . . .

3  12 U.S.C. § 1831d(a) (emphasis added).  Congress borrowed this provision from

4  the NBA, and specifically intended the FDIA to have the same preemptive scope as

5  the NBA:  "The FDIA was enacted in part to "provide parity, or competitive

6  equality, between national banks and State chartered depository institutions."

7  *Vaden*, 489 F.3d at 604 (quoting 126 Cong. Rec. 6908 & 6900 (1980) (statements

8  of Sen. Bumpers and Sen. Proxmire, respectively)).  Cases interpreting the NBA

9  are, therefore, persuasive authority when determining the preemptive reach of the

10  FDIA.  *Greenwood Trust Co. v. Mass.*, 971 F.2d 818, 827 (1st Cir. 1992) ("[t]he

11  historical record clearly requires a court to read the parallel provision of [the FDIA]

12  and the Bank Act in pari materia").

13      Mr. Sawyer cannot invoke California law in a suit against Bill Me Later to

14  preclude enforcement of his contract with CIT.  CIT has a charter from Utah and is

15  federally insured.  (Exs. C & D to Brown Decl. ¶¶ 4, 5.)  Under California law, CIT

16  is exempt from state usury laws, and under the FDIA it may charge the interest rate

17  allowed by Utah law.  Cal. Fin. Code § 1716; 12 U.S.C. § 1831d.  Utah law allows

18  the parties to contractually agree to any amount of interest.  Utah Code Ann.

19  § 15-1-1(1).  And CIT and Mr. Sawyer agreed to the rate of 19.99% on his loan.

20  (Ex. A to Brown Decl., ¶ 2, at 2-3, 6.)

21           **2.**      **Mr. Sawyer Cannot Avoid Preemption by Omitting the True**

22                   **Lender from His Complaint**

23      Mr. Sawyer concedes that he has no claim if CIT actually extended the credit

24  on the terms to which he now objects.  (Compl. ¶¶ 33, 34.)  As a consequence,

25  Mr. Sawyer's complaint goes to great lengths to conceal the inconvenient truth that

26  CIT is, in fact, the lender.  (*See, e.g.*, *id.* ¶¶ 4-7, 37, 40.)  But this is a fact that

27  Mr. Sawyer cannot ultimately deny, especially since he explicitly admits that CIT

28  extended the loan.  (*Id.* ¶¶ 49, 50.)  Although Mr. Sawyer has chosen not to name

DEFENDANT BILL ME LATER'S
MOTION TO DISMISS
NO. CV-10-4461 SJO (JCGx)

1   CIT in his complaint, this omission does not control the disposition of his claim.  In

2   determining whether Mr. Sawyer is attempting to invoke California law against an

3   out-of-state bank, the Court must look at the nature of the claims instead of

4   Mr. Sawyer's choice of defendants.  *See, e.g.*, *Vaden*, 489 F.3d at 601.  Because

5   Mr. Sawyer's claims revolve around his allegation that usurious interest rates were

6   charged on the loan made by CIT, his claims effectively target CIT.

7        In *Vaden*, the Fourth Circuit found that claims almost identical to

8   Mr. Sawyer's were preempted by the FDIA.  *Id.* at 606.[6]  Discovery Financial

9   Services ("DFS"), a non-bank servicing affiliate of Discover Bank, sought to

10  recover unpaid amounts on a credit card account; the cardholder counterclaimed

11  that the finance charges, late fees and compound interest charged on her account

12  violated state law.  In determining whether the district court could hear the case, the

13  court looked at whether jurisdiction lay in preemption of the counterclaims.  While

14  the cardholder argued against preemption on the grounds that Discover Bank was

15  not a party to the action, the court reasoned:  "[t]he identity of the 'real' party may

16  not always be apparent from the face of the pleadings; it may be necessary to look

17  beyond the pleadings to the facts of the dispute."  *Id.* at 601.  The *Vaden* court

18  therefore looked at the relationship between the parties and the claims asserted to

19  determine "whether [the cardholder's] state-court counterclaims are really directed

20  at [the bank] rather than DFS."  *Id.*

21       The *Vaden* court found that Discover Bank was the real party in interest even

22  though it was not named in the complaint.  The following factors weighed in favor

23  of this finding:  (1) the bank was the originator of the loan; (2) the bank and the

24  cardholder were the only parties to the credit agreement; (3) the bank issued the

25  credit on the account; and (4) the cardholder's claims challenged the interest rates

26  _____

27  [6]  Although the Supreme Court reversed the court's jurisdictional finding in *Vaden*,
    the Fourth Circuit's reasoning still stands.  The Court did not question or disagree
    with the finding that Vaden's counterclaims would be preempted by the NBA.

28  *Vaden v. Discover Bank*, 129 S. Ct. 1262 (2009).

1   and late fees, and so were directed against the entity extending her credit, Discover

2   Bank.  *Id.* at 602.  While DFS serviced the loans, performed all marketing and

3   collection efforts, and mailed monthly bills to the cardholders, this was not

4   sufficient to give DFS lender status, especially since DFS never identified itself as

5   the lender.  *Id.*

6         These same factors are present here.  As Mr. Sawyer acknowledges, CIT

7   funds the loans and extends the credit to Bill Me Later customers.  (Compl. ¶ 50.)

8   CIT is identified as the lender in the Agreement, and CIT and the consumer are the

9   only "parties" identified in the Agreement.  (Ex. A to Brown Decl. ¶ 2, at 1, 3.)

10  Mr. Sawyer's claims challenge the loan's interest rates and late fees, and so are

11  directed against the entity extending him credit, CIT.  (*See, e.g.,* Compl. ¶¶ 25, 33,

12  34, 74, 81.)  And, finally, Bill Me Later never identifies itself as the lender; as the

13  Agreement makes clear, CIT is the lender.  (Ex. A to Brown Decl. ¶ 2, at 1, 3; *see*

14  *also* Argument § II.B.)  These factors show that CIT is the lender.

15       *Krispin* is in accord.  In *Krispin*, plaintiff sued the May Department Stores

16  under state law for excessive credit card late fees on a card originally issued by the

17  store.  218 F.3d at 919.  While the store was a party to the original credit agreement,

18  it later created May National Bank of Arizona and gave notice to cardholders that

19  credit on the account would thereafter be extended by the bank.  Since at the time of

20  suit the bank originated the loans and extended the credit to consumers, the real

21  party in interest was the bank.  This was true even though the bank was not a party

22  to the action and the store purchased the bank's receivables on a daily basis.

23       Mr. Sawyer cannot salvage his claim by choosing to name Bill Me Later

24  rather than CIT.  "[T]he question here is not *whom* the [state] statute regulates, but

25  rather, against *what activity* it regulates."  *Ayotte*, 488 F.3d at 532.  In *Ayotte*, the

26  attorney general claimed that SPGGC-branded prepaid gift cards marketed at its

27  shopping malls violated state consumer protection laws prohibiting gift certificates

28  with expiration dates and administrative fees.  The attorney general argued that no

14

1   enforcement action had been brought against the issuing banks and that the state

2   laws only sought to regulate the conduct of SPGGC, a non-bank.  But the court

3   looked at what the state laws sought to regulate—expiration dates and

4   administrative fees—the very terms and conditions governing the relationship

5   between the consumer and the issuing bank.  Since the state-law claims sought to

6   dictate the terms of the bank-issued gift cards, those claims were directed at the

7   bank and preempted.

8        *Ayotte* compels a similar result here.  CIT extends the loans at issue, and the

9   terms of the lending agreement are defined by his Agreement with CIT.  (*See*

10  *generally* Ex. A to Brown Decl. ¶ 2.)  Mr. Sawyer does not allege that he paid

11  interest or fees higher than the amounts he agreed to; he complains that the rates

12  contained in the Agreement are simply too high.  (Compl. ¶¶ 56-58; Ex. A. to

13  Brown Decl. ¶ 2, at 2-3.)  These claims, therefore, are aimed at CIT and preempted.

14        **3.        Payday Lending Cases Cannot Revive Mr. Sawyer's Claims**

15        Mr. Sawyer's attempt to analogize Bill Me Later's consumer credit service to

16  a payday loan is unavailing.  That CIT issues the credit on the accounts bring this

17  case in-line with *Krispin* and *Vaden*, where that allegation was pivotal.  The

18  absence of such an allegation in *Flowers v. EZPawn Oklahoma, Inc.*, 307 F. Supp.

19  2d 1191 (N.D. Okla. 2003), which Mr. Sawyer cites in his complaint, distinguishes

20  *Flowers* from *Krispin*, *Vaden*, and this case.  (Compl. ¶ 38.)

21        In *Flowers*, plaintiff brought a putative class action against pawnshops

22  offering "payday loans" to consumers at usurious interest rates.  The complaint

23  alleged that EZPawn was the party that *lent the money* and was the *lender* on the

24  loan.  307 F. Supp. 2d at 1205.  While defendants argued that the bank was the real

25  lender, they offered no evidence to support this assertion—not the loan application

26  or the agreement with the borrower.  Absent anything to the contrary, the court

27  found the facts in the petition sufficient to prevent preemption.  This is not the case

28  here.  Mr. Sawyer does not dispute that CIT, not Bill Me Later, funds the loans and

15

extends the credit to the consumers.  (Compl. ¶ 50.)  This fact alone sufficiently distinguishes this case from *Flowers* and brings it in line with *Krispin* and *Vaden*.

## B. Since Late Fees Constitute "Interest" Under the Federal Banking Laws, Mr. Sawyer's Breach of Contract Claim Is Likewise Preempted

Mr. Sawyer cannot invoke California law to challenge the late fees set forth in his contract with CIT.  The Supreme Court has specifically held that the term "interest" in the national banking laws includes late fees.  *Smiley v. Citibank (S.D.), N.A.*, 517 U.S. 735, 738 n.1 & 746-47 (1996) (affirming application of definition of "interest" in 12 C.F.R. § 7.4001(a)); *see also Mamot Feed Lot & Trucking v. Hobson*, 539 F.3d 898, 903 (8th Cir. 2008) (applying same CFR provision to the FDIA).  And for this reason, the Supreme Court has held that a California consumer cannot invoke Section 1671 to challenge the late fees contained in a contract with a foreign bank.  *Smiley*, 517 U.S. at 738 n.1 & 746-47.  For purposes of federal banking law, late fees are "interest," and claims challenging excessive late fees are preempted just like claims for allegedly usurious interest.  *Id*. at 747.[7]  Simply put, Mr. Sawyer's breach of contract claim is barred by the FDIA.

## C. Since Mr. Sawyer's UCL Claim Is Premised on Preempted Claims, It Also Must Fail

Mr. Sawyer's UCL claim is premised on his assertion that the Agreement's interest rate and late fees violate California law.  (Compl. ¶¶ 85-94.)  Therefore, this claim rises and falls with his claims challenging the interest rate and late fees.  As discussed above, the alleged usurious interest and penalty late fees are lawful under applicable Utah law.  And such lawful acts cannot support a claim for "unlawful" practices.  *See, e.g.*, *Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF, 2009

---

[7]  Under the choice of law and preemption analysis, Utah law applies and the late fees comply with that law.  Utah Code Ann. § 70C-1-106 (delinquency fees considered interest for purposes of determining interest allowed under NBA or FDIA); § 70C-2-102(1)(b) (sets no limit on the amount of delinquency charges allowed in consumer credit agreements entered after May 3, 1999).

DEFENDANT BILL ME LATER'S
MOTION TO DISMISS
NO. CV-10-4461 SJO (JCGx)

1   WL 1635931, at *16 (N.D. Cal. June 5, 2009) (if plaintiff's statutory claims fail,

2   those business practices are not "unlawful" under the UCL).[8]

3       The same is true for Mr. Sawyer's claim for "unfair" business practices.

4   (Compl. ¶ 95.)  Actions that are permitted under another statute—such as the

5   FDIA—cannot be "unfair" practices under the UCL.  *Cel-Tech Commc'ns, Inc. v.*

6   *L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 184 (1999).

7       This case is similar to *In re Late Fee & Over-Limit Fee Litigation*, 528 F.

8   Supp. 2d 953 (N.D. Cal. 2007).  In *Late Fee*, plaintiff consumers alleged that

9   defendant banks engaged in "unfair" practices by imposing excessive late and over-

10  limit fees.  *Id.* at 957.  These claims were found to be preempted by the NBA and in

11  compliance with applicable state law.  *Id.* at 965.  The court held that "under the

12  substantive terms of the UCL, the defendant banks could not properly be deemed to

13  have engaged in unfair or deceptive practices under the statute by acting

14  consistently with all existing legal interpretations of the NBA and with the express

15  disclosures of their contracts concerning late and over-limit fees."  *Id.* at 965-66;

16  *see also Spiegler v. Home Depot U.S.A., Inc.*, 552 F. Supp. 2d 1036, 1045 (C.D.

17  Cal. 2008) (as a matter of law there could not be any "unfair" conduct where the

18  defendants "complied with the express terms of the contracts, and charged plaintiffs

19  in accordance with their terms.").

20      The same result is required here.  CIT's interest rates and late fees are

21  *expressly authorized* by the FDIA because they comply with Utah law.  The interest

22  rates and late fees also comply with the express terms of the Agreement.  The

23  interest rates and fees are neither "unlawful," "unfair," nor "deceptive" under the

24  UCL.  (*See* Compl. ¶¶ 85-95.)

25

26

_____

27  [8] To the extent Mr. Sawyer's UCL claims also rely on an alleged violation of the
    CLRA, that claim fails for the reasons set forth below.  (*See* Argument § IV;
28  Compl. ¶ 89.)

DEFENDANT BILL ME LATER'S
MOTION TO DISMISS
NO. CV-10-4461 SJO (JCGx)

## IV.   UNDER CALIFORNIA LAW, MR. SAWYER'S CLRA CLAIM FAILS AS A MATTER OF LAW

The CLRA only applies when the alleged unfair methods of competition or unfair or deceptive acts or practice relate to a "transaction intended to result or which results in the sale or lease of *goods or services* . . . ." Cal. Civ. Code § 1770(a) (emphasis added).  But a loan is neither a good nor a service as defined by the Act.  Under the Act, "goods" are defined as "tangible chattels," and "services" are defined as "work, labor, or services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." *Id*. §§ 1761(a), (b).  A loan is an intangible good, and even if some ancillary loan services are provided, that does not "bring these [intangible] goods within the coverage of the CLRA." *Consumer Solutions REO, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1016 (N.D. Cal. 2009).

This interpretation is supported by the Act's drafting history.  While the draft Act included the phrase "goods, services, *money, or credit*," the terms "money or credit" were removed before enactment.  *Berry v. Am. Express Publ'g, Inc.*, 147 Cal. App. 4th 224, 230 (2007).  This omission demonstrates a clear legislative intent that the Act not apply to transactions to obtain a loan.  *Id*. at 230-31.  As such, "extension[s] of credit . . . *separate and apart* from the sale or lease of any specific goods or services, do[] not fall within the scope of the act." *Id*. at 227; *see also Augustine v. FIA Card Servs., N.A.*, 485 F. Supp. 2d 1172, 1175 (E.D. Cal. 2007).  Although the credit obtained using Bill Me Later is used to purchase a good or service, this is not sufficient to bring the loan within the CLRA.  *Berry*, 147 Cal. App. 4th at 229-30 (that the consumer may use his credit card to purchase goods or services does not bring extensions of credit within the CLRA).

Independently, the complaint lacks sufficient facts to support a CLRA claim.  Mr. Sawyer alleges that Bill Me Later "disguise[d] the true lending relationship in connection with these consumer loans." (Compl. ¶ 1.)  But the

18

1   nature of the lending relationship and the loan product offered by CIT are both fully

2   disclosed in the Agreement, which contains the only representations made during

3   the pre-loan interaction with Bill Me Later.  (Ex. A to Brown Decl. ¶ 2.)  The

4   Agreement clearly states that CIT is the lender.  (*Id*. at 1, 4; *see also* Argument

5   § II.B.)  The Agreement also clearly describes the nature of the account:

6           This is a multi-part open-end credit account.  [Consumer] will request

7           a loan on this Account by choosing the Bill Me Later Payment System

8           when [he] make[s] a purchase from a Merchant . . . .  Purchases will be

9           added to the balance . . . . [CIT] will charge a Finance Charge on all

10          parts of this Account, beginning on each transaction date, except

11          during the Grace Period . . . .

12  (Ex. A to Brown Decl. ¶¶ 2, 4.)  And in describing how to obtain loans on the

13  account, the Agreement states that after choosing to pay using Bill Me Later "[CIT]

14  will make a loan to [consumer], in the amount of the Cost of the purchase, by

15  paying the Merchant on [his] behalf."  (*Id*.)  Bill Me Later is described as the party

16  who "developed [the Bill Me Later Payment System] and provides services for

17  [CIT], such as processing transactions, keeping records, sending billing statements

18  and providing customer service."  (*Id*. at 3.)  There is no ambiguity in the

19  Agreement, and therefore, no basis for a CLRA claim.

20          Additionally, the CLRA only allows recovery of "damage as a result of" the

21  activities prohibited by the Act.  Cal. Civ. Code § 1780(a).  This means that

22  Mr. Sawyer must show not only that Bill Me Later misrepresented the true nature

23  of the lending relationship, but that in the absence of that misrepresentation, he

24  would not have agreed to the loan.  *See, e.g.*, *Kearns v. Ford Motor Co.*, 567 F.3d

25  1120, 1125 (9th Cir. 2009) (affirming dismissal of UCL and CLRA claims where

26  plaintiff failed to allege reliance on any representations made by defendants in

27  deciding to purchase defendants' vehicle); *Buckland v. Threshold Enters., Ltd.*, 155

28  Cal. App. 4th 798, 810 (2007) ("plaintiffs asserting CLRA claims sounding in fraud

DEFENDANT BILL ME LATER'S
MOTION TO DISMISS
NO. CV-10-4461 SJO (JCGx)

1  must establish that they actually relied on the relevant representations or

2  omissions").  And such facts must be pled with particularity under Federal Rule of

3  Civil Procedure 9(b).  Fed. R. Civ. P. 9(b); *Vess v. Ciba-Geigy Corp. USA*, 317

4  F.3d 1097, 1103-05 (9th Cir. 2003) (Rule 9(b) pleading standard applies to UCL

5  and CLRA claims where plaintiff alleges fraudulent conduct).  Mr. Sawyer fails to

6  plead ***any*** facts, let alone facts sufficiently particular under Rule 9(b), showing his

7  reliance on the alleged misrepresentations regarding the nature of the lending

8  relationship.

9                                    **<u>CONCLUSION</u>**

10         This case should be dismissed because Mr. Sawyer has failed to state any

11  claim under Utah law, as is required by the choice of law provision to which he

12  willingly agreed.  In the alternative, this case should be dismissed because all of

13  Mr. Sawyer's claims are either preempted by federal law and exempt from

14  California usury law, or simply fail as a matter of law.

15         Dated:  June 24, 2010              O'MELVENY & MYERS LLP

16                                           By:  /s/ **Thomas P. Brown**
17                                                Thomas P. Brown
                                                 Attorneys for Defendant
18                                               BILL ME LATER, INC.

19  SF1:787254

20

21

22

23

24

25

26

27

28

DEFENDANT BILL ME LATER'S
MOTION TO DISMISS
NO. CV-10-4461 SJO (JCGx)