Case 2:10-cv-04461-SJO-JCG   Document 9-2   Filed 06/24/10   Page 1 of 13   Page ID #:233

# EXHIBIT A

## Terms and Conditions of the Bill Me Later® Payment System

Bill Me Later® is an open-end credit plan offered by CIT Bank, Salt Lake City, Utah ("the Lender"). By using Bill Me Later® to complete this purchase, you apply for credit and you agree that you have read the Terms and Conditions; you authorize the Lender to review your credit report and you understand that this account is subject to interest and Late Fees and is governed by Federal law and the law of the state of Utah. You authorize the Merchant to share your personal information, including email address, with the Lender, and authorize the Lender to use that information for all lawful purposes in connection with the account.

The Terms and Conditions of Bill Me Later® include the following:

- E-Sign Consent
- Important Disclosures
- Account Agreement
- Privacy Notice

### Bill Me Later® E-Sign Consent

**Consumer Consent to receive disclosures and other information electronically.**

**IMPORTANT NOTICE. In order to complete this transaction online, the Lender must provide the consumer with certain disclosures required by law. The Lender can provide these disclosures to the consumer online only if the consumer consents. The consumer should choose another payment option if the consumer does not consent.**

**1. DEFINITIONS**. In this Bill Me Later E-Sign Consent, the following definitions apply:
"I", "me" and "Borrower" mean the person who is asking to use Bill Me Later to make a purchase. "You" and "Lender" mean the Lender and any person, company or bank to whom the rights of the Lender have been assigned. "Bill Me Later Payment System" is your payment system, which allows me to pay for purchases from participating Merchants by charging the costs to my Bill Me Later Account. It may be called simply "Bill Me Later".

**2. CONSUMER CONSENT**. By checking the "I agree to have the Terms and Conditions presented electronically", which I hereby adopt as my electronic signature, I consent and agree that:

- You can provide disclosures required by law and other information about my legal rights and duties to me electronically.
- My electronic signature on agreements and documents has the same effect as if I signed them in ink.
- You can send all important communications, billing statements and disclosures (collectively defined as "Disclosures") to me electronically to the email address that I have provided to the Merchant in this transaction or to another email address that I provide to you for that purpose rather than in paper form.
- You will alert me when the Disclosure is available, by sending me an electronic communication.
- Your email will tell me how I can view the Disclosure.
- You will make the Disclosure available to me for not less than 90 days from the later of: the date it first became available to me or the date you sent me the email to alert me that it was available.
- I will be able to print a copy of the Disclosure or download the information for my records.
- This consent applies to this transaction, to all future Disclosures on this Account, to all future transactions in which I use the Bill Me Later Payment System or with you, at any time, and to other Disclosures that you provide to me by email, unless I have, prior to such transaction, withdrawn my consent by the procedure mentioned below.

The disclosures and information I will receive in this online session are:

- This Bill Me Later E-Sign Consent
- Bill Me Later Important Disclosures
- Bill Me Later Account Agreement
- Privacy Notice

**3. WHAT I WILL NEED**. I understand that in order to access and retain the electronic Disclosures I will need the following:

- A computer with an Internet connection
- A current web browser that includes 128-bit encryption. (Minimum recommended browser standards are Microsoft Internet Explorer version 6.0 and above, Firefox version 1.5 and above, or Safari 2.0 and above.) The browser must have cookies enabled.
- A valid email address.
- Sufficient storage space to save past Disclosures OR an installed printer to print them.
- If I use a spam filter that blocks or re-routes emails from senders not listed in my email address book, I must add

customercare@bill-me-later.com to my email address book.

**4. REQUESTING PAPER DOCUMENTS AND WITHDRAWING CONSENT.** I understand that I may request paper copies of the Disclosures within 180 days of the date of the Disclosure, and that you will provide them to me by mail at no charge. I understand that I have the right to receive these Disclosures in paper form and that I may withdraw my consent by logging into www.billmelater.com and going to "Manage Account". I can also request paper copies and/or withdraw consent by contacting you at:

Bill Me Later<br>
PO Box 2394<br>
Omaha, NE 68103-2394

**5. UPDATING EMAIL ADDRESS.** At any time, I can update the email address to which you will send alerts that my Disclosure is available. I can change my email preferences by logging into www.billmelater.com and going to "Manage Account." I can also do this by contacting you at:

Bill Me Later<br>
P.O. Box 2394<br>
Omaha, NE 68103-2394

**6. LEGAL EFFECT.** By consenting, I agree that electronic Disclosures have the same meaning and effect as if you provided paper Disclosures to me as you are required to do so. When you send me an email alerting me that the Disclosure is available electronically and make it available online, that shall have the same meaning and effect as if you provided a paper Disclosure to me, whether or not I choose to view the Disclosure, unless I had previously withdrawn my consent to receive Disclosures electronically.

**7. GENERAL.** I understand and agree that you reserve the right to cancel this electronic Disclosure service, change the terms of use of this service or send Disclosures in paper form at any time. I understand and agree that you are responsible for sending notice of the Disclosures to me at the email address I have provided, but are not responsible for any delay or failure in my receipt of the email notices.

**Bill Me Later® Important Disclosures**

**NOTICE TO BORROWER:** (1) CAUTION - IT IS IMPORTANT THAT BORROWER THOROUGHLY READ THE DISCLOSURES AND AGREEMENT BEFORE BORROWER AGREES, (2) BORROWER SHOULD RETAIN A COPY OF THE DISCLOSURES AND AGREEMENT FOR BORROWER'S RECORDS.

| Interest Rate and Interest Charges | |
|---|---|
| **Annual Percentage Rate (APR) for Standard, Promotional and Financed Installment Purchases** | **19.99%*** |
| **Paying Interest** | My due date is at least 25 days after the close of each billing cycle. You will not charge any interest on Standard or Promotional Purchases (excluding Promotional Purchases subject to a Deferred Interest option) if I pay the entire balance by the due date each month. You will begin charging interest on purchases subject to an Extended Grace Period on the last day of the billing cycle in which the expiration date occurs, which will be at least 58 days after the transaction date. You will charge interest on a Deferred Interest Purchase from its transaction date, unless I pay the Deferred Interest balance in full by its expiration date, which will be at least 6 months after the transaction date. You will begin charging interest on Financed Installment Purchases on the transaction date. |
| **Minimum Interest Charge** | If I am charged interest, the charge will be no less than **$2.00**. |
| **Fees** | |
| **Annual Fee** | None. |

| Penalty Fees | | |
|---|---|---|
| • Late Payment Fee | If the balance is:<br>Under $5.00<br>$5.00 to $19.99<br>$20.00 to $149.99<br>$150.00 to $249.99<br>Over $249.99 | The late fee is:<br>**$0.00**<br>**$5.00**<br>**$19.00**<br>**$29.00**<br>**$39.00** |
| • Return Check Fee | $25 | |

**How Lender Will Calculate the Balance:** Lender uses a method called "average daily balance" (including current transactions). See the account agreement for more details.
**Billing Rights:** Information on Borrower's rights to dispute transactions and how to exercise those rights is provided in the account agreement.

*From time to time Lender may offer Standard Purchases or Promotional Purchases with a lower rate that may apply for a limited time.

**Amendment of the Terms and Conditions.** Lender may amend the Agreement, including any of the terms stated above, from time to time, in accordance with the paragraph of the Agreement called "Amendment of this Agreement."

**Important information about procedures for opening a new account.** To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. **What this means for Borrower:** When Borrower opens an account, Lender will obtain Borrower's name, address, date of birth, and other information that will allow Lender to identify Borrower. Lender will verify this information with Borrower or others.

**The Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.**

**As required by California law, a married applicant may apply for a separate account.**

**Lender may obtain a report from a consumer credit reporting agency in connection with this application and/or for any updates, renewals, extensions of credit on this Account or collection of any loan made as a result of the application. If Applicant(s) requests to be informed whether or not a consumer credit report was obtained, Lender will provide that information, including the name and address of each consumer reporting agency from which a consumer credit report was obtained.**

**Bill Me Later® Account Agreement**

This Agreement sets forth the terms and conditions of the Bill Me Later Credit Account (the "Account") and the extensions of credit made by CIT Bank, Salt Lake City, Utah ("the Lender"). Please read this Agreement and keep a copy.

**1. DEFINITIONS.** In this Bill Me Later Account Agreement, the following definitions apply:
"Agreement" means the Bill Me Later Important Disclosures, Account Agreement, and any amendment or addendum to this Agreement.
"*Bill Me Later Payment System*" is the payment system which allows me to pay for purchases from participating Merchants by charging the Costs to my Account. In this Agreement it may be called simply "Bill Me Later."
"*Purchases*" are loans made on the Account to the Borrower, when the Borrower chooses the Bill Me Later Payment System to pay for a purchase from a Merchant.
**a. Parties to this Agreement.**
"*I*", *"me" and "Borrower"* mean the person who applied for this Account and agrees to this Agreement.
*"You"* means the Lender, and any person, company or bank to whom the rights of the Lender have been assigned.
**b. Other Parties**.
"Bill Me Later, Inc.," located in Timonium, Maryland, developed Bill Me Later and provides services for the Lender, such as processing transactions, keeping records, sending billing statements and providing customer service.
("*Bill Me Later*" is a registered trademark of Bill Me Later, Inc.)
"Merchant" means a merchant participating in and authorized to accept the Bill Me Later payment option.
**c. Parts of the Account.**
**i) Revolving Parts.**
"*Standard Purchases*" are subject to the standard repayment terms, Grace Period and Annual Percentage Rate, unless they are

subject to an Extended Grace Period.
*"Purchases subject to an Extended Grace Period"* are Standard Purchases subject to special repayment terms and a special Grace Period; they are subject to the standard Annual Percentage Rate. The Extended Grace Period ends on the last day of the billing cycle in which the Expiration Date occurs. The Extended Grace Period will end no earlier than 58 days after the transaction date, as disclosed when the transaction is made. No payments are due and no interest accrues during the Extended Grace Period. A purchase subject to an Extended Grace Period, where the Expiration Date is 90 days after the transaction date, may be called a "*Take 90. No Payments, No Interest for 90 days*" purchase or a "90 Days Extended Grace" purchase (the number of days can vary, but will not be less than 58 days). After its Extended Grace Period, a purchase subject to an Extended Grace Period is a Standard Purchase and is not a purchase subject to an Extended Grace Period.
*"Promotional Purchases"* may be subject to special, promotional repayment terms and/or Annual Percentage Rates for all or part of the time they are unpaid. Promotional Purchases are subject to the standard repayment terms and rate, except to the extent that the promotional offer states different terms.
*"Deferred Interest Purchases"* are Promotional Purchases on which no interest will be charged if they are paid in full within the deferred interest period. Interest will be charged from the purchase date if the purchase balance is not paid in full within the deferred interest period. The deferred interest period may be 6 months or more as disclosed when the transaction is made .
*"No payments for 6 months purchases"* are Deferred Interest Purchases on which no payments will be due during a 6 month deferred interest period.
*"No interest if paid in full purchases"* are Deferred Interest Purchases on which payments will be due during the deferred interest period..."
**(ii) Installment Parts.**
*"Installment Purchases"* are loans from the installment part of the account, which will be repaid in monthly installments called "Monthly Plan Payments."
*"Interest-free Installment Purchases"* will not be subject to interest imposed by the Lender, if Borrower pays the balance in full by the End Date.
*"Financed Installment Purchases"* will be subject to interest imposed by the Lender.

**d. Other Definitions used in this Agreement.**
*"Billing Cycle"* means the time between the dates on which you prepare billing statements, or would have prepared them if statements were required under the paragraph of this Agreement called "Billing Statements." The Billing Cycle will end on approximately the same day of each month. You may change the day the Billing Cycle ends, at your option. The Billing Cycle will end on any day that you or I Terminate the Account and I pay the balance in full.
*"Closed-end Loan"* means a closed-end loan from the Lender to the Borrower, the proceeds of which are paid to a Merchant to pay the Cost of Borrower's purchase from the Merchant, using Bill Me Later, at a time when the Borrower does not have an active Account.
*"Cost"* means the price of any item I purchase from a Merchant using Bill Me Later, plus any fee or charge I agree to pay the Merchant, including Interest Charges, the cost of shipping and taxes, less any applicable discount or credit offered by the Merchant.
*"End Date"* is the Payment Due Date of the final Monthly Plan Payment on an Installment Purchase.
*"Expiration Date"* for a Deferred Interest Purchase is the date on which the deferred interest period ends; for a purchase subject to an Extended Grace Period, it is a date 60 or 90 days (or other period) after the transaction date, as disclosed when the transaction is made.
*Grace Period"* means the period within which I may repay a loan without incurring any interest on that loan. The Grace Period applies only to Standard Purchases and Promotional Purchases which are not Deferred Interest Purchases.
*"Payment Due Date"* means the date which will appear each month as the "Payment Due Date" on the billing statement.
*"Termination"* means that I will no longer be able to obtain loans or any extension of credit on this Account. Termination affects the Account permanently, at the sole discretion of the lender.

**2. GENERAL DESCRIPTION OF THE ACCOUNT.** This is a multi-part open-end credit account. I will request a loan on this Account by choosing the Bill Me Later Payment System when I make a purchase from a Merchant at a web site, by telephone, or at another authorized location. Purchases will be added to the balance of the Standard Purchases part of the Account, unless they are subject to special terms for Promotional or Installment Purchases. You will charge interest on all parts of this Account, beginning on each transaction date, except during the Grace Period and as otherwise provided in the paragraph of this Agreement called " Interest Rate and Interest Charges." I will only have the right to use some parts of the Account from time to time, when you make a special offer. The rate of interest may be different for different parts of the Account. You may make changes in this Agreement as explained in the paragraph called "Amendment of this Agreement."

**3. HOW I AGREE TO THIS AGREEMENT.** I agree to this Agreement and I make the promises it contains by doing either of the following:
**a. Requesting an Account.** I may request an Account in any of the ways you may provide.
**b. Using Bill Me Later after I receive this Agreement.** If I obtain a Closed-end Loan from you, you may send me information about Bill Me Later, including this Agreement. By using Bill Me Later after I receive this Agreement, I agree to this Agreement.

**4. HOW I CAN OBTAIN LOANS ON THIS ACCOUNT.**
**a. Standard and Promotional Purchases.** I can obtain loans on this Account by choosing the Bill Me Later Payment System when I make a purchase from a Merchant at a web site, by telephone, or at another authorized location. You will make a loan to me, in the amount of the Cost of the purchase, by paying the Merchant on my behalf. You will make loans subject to the Standard Purchase terms, unless special terms are in effect at the time of the loan or are offered by the Merchant.

**b. Installment Purchase.** You may offer me the opportunity to make purchases from some Merchants as Installment Purchases. You may offer this as the only method I can use to make a purchase from a Merchant, or as an option to the Standard Purchase method. If I make an Installment Purchase, the Merchant will inform me if it is a Financed Installment Purchase and of the payment amount and terms, before I agree to the purchase.

**c. Refinance of Closed-end Loan.** If I have any unpaid Closed-end Loans from you at the time I open this Account, I request that you refinance the Closed-end Loans by making a loan from this Account. The loans will be from Installment Purchase parts of the Account, subject to the same interest rates, payment terms and End Dates as the Closed-end Loans that were refinanced.

**d. Other Agreements about Obtaining Loans.**

**(i) No Pre-Established Credit Line.** There is no pre-established credit line for this Account . You will evaluate my request for credit at the time I open my Account and make my first purchase. Generally, credit will be available to borrow again as I repay the balances from previous loans. You may occasionally and routinely verify credit information about me and obtain an updated consumer report in connection with this Account. You may verify credit information from time to time in connection with specific purchases. You have the option to refuse my request for any loan, but you will notify me of the reasons for any refusal.

**(ii) You may charge my Account for Purchases**. I authorize you to charge this Account for the Cost of any purchase I, or anyone to whom I have given permission to use this Account make from a Merchant using Bill Me Later. I understand that the amount that you actually pay to the Merchant may be less than the Cost, because the Merchant may agree that you may retain a portion of the Cost in order to participate in Bill Me Later.

**(iii) You may charge my Account for Interest and Fees**. I authorize you to charge this Account for interest, any Fees, costs of collection, and amounts that I agree in this Agreement to pay.

**5. MY PERSONAL INFORMATION**. Each time I choose Bill Me Later, I authorize the Merchant to share my personal information with you to the extent necessary for you to make a credit decision and complete the transaction, including paying the Merchant on my behalf, opening my Account, charging my Account for the Costs of the purchase, sending me a billing statement, servicing my Account and for all other lawful purposes in connection with this Account. I authorize the Merchant to share my email address with you. I consent to your sending me emails for any lawful purpose in connection with this Account, including commercial emails for marketing Bill Me Later, its features, and the benefits of using Bill Me Later at Merchants who accept it. I may withdraw my consent to your sending me commercial emails, at any time, by changing my "email preferences" at the www.billmelater.com website, or by "unsubscribing" when you send me an email.

**6. PROMISE TO PAY.** Borrower promises to pay to you the balance on this Account, including all purchases, loans and other amounts Borrower has authorized you to charge to this Account. Borrower promises to pay these amounts as agreed in this Agreement, including the promise to make the Minimum Payment Due each month on or before the Payment Due Date.

**7. BORROWER ALSO PROMISES:**

**a.** To pay for all purchases made by me and by someone I authorized to use this Account. You (and any person who may decide whether I am liable for amounts charged to this Account) may presume that I have authorized any purchase made in my name using this Account, if the purchase is delivered in my name to my address, unless I return the purchase to the Merchant within a reasonable period of time. I will not be responsible for any unauthorized purchases using this Account.

**b.** To give you personal financial information about me that you may reasonably request, from time to time.

**c.** To pay all costs of collection if you take any action to collect this Account or take any action in a bankruptcy proceeding filed by or against me, if you are permitted by applicable law to charge those costs. This shall include, unless prohibited by applicable law, reasonable attorneys' fees and expenses to the maximum amount permitted by applicable law.

**d.** Not to give you false information or signatures, electronic or otherwise, at any time.

**e.** To pay a Late Fee and Return Check Fee, as provided in this Agreement.

**f.** To make all payments by check, money order, electronic funds transfer or ACH in U.S. Dollars, drawn on funds on deposit with a U.S. financial institution or a U.S. branch of a foreign financial institution, in a form that will be processed and honored by your financial institution, in accordance with the reasonable requirements set forth on the billing statement, and to make each payment so that you receive it at the remittance address disclosed on the billing statement. If I make a non- conforming payment, you may refuse to accept the payment or, if you do accept it, I agree to pay your costs of processing the payment. A nonconforming payment, if accepted by you, will be credited to my Account not more than 5 days after the date you receive it, unless otherwise required by law. A non-conforming payment includes, among other things, a payment that is not made in accordance with this paragraph and with the reasonable requirements set forth on the billing statement, oversized and undersized instruments, instruments using non-standard materials, instruments in a non-standard format, and any non-standard instrument that requires special handling.

**g.** That when I make a payment on this Account by check, I authorize you to use information from my check to make a one-time electronic fund transfer from my account. In certain circumstances, such as for technical or processing reasons, you may process my payment as a check transaction. When you use information from my check to make an electronic fund transfer, funds may be withdrawn from my account as soon as the same day you receive my payment, and I understand that I will not receive my check back from my financial institution. I have the right to withdraw this authorization at any time by informing you

that I do not want you to use the information from my checks to make an electronic fund transfer; to do so, I must contact you in writing at Electronic Check Opt Out, P.O. Box 4415, Timonium, MD 21094 and provide you with my name, Bill Me Later account number and the name of the financial institution and account number from which my checks are drawn.

**h.** To promptly notify you if I change my name, my mailing address, my e-mail address or my telephone number.

**i.** To honor any other promises that I make in this Agreement.

**j.** That I will not accept this Account unless I am of legal age in the state where I reside and am a resident of the U.S.A.

**k.** If I am dissatisfied with goods or services I purchased from a merchant, I will try in good faith to resolve the dispute and correct the problem directly with the Merchant. I agree to allow a reasonable period of time for the Merchant to resolve the dispute. This shall in no way limit or reduce my rights in case of a billing error.

**l.** To use Bill Me Later only for personal, family or household purposes.


**8. SECURITY INTEREST.** You will not take any security interest to secure this Account.


**9. INTEREST RATE AND INTEREST CHARGES.** Except during the Grace Period and during the term of an Interest-free Installment Purchase prior to the End Date, Borrower agrees to pay interest on the outstanding balance of each part of this Account, including billed interest and billed Fees, at all times that this Account is in effect, including any period after Termination in which there remains an outstanding balance. The interest will be calculated for each part of the Account separately, as of the last day in the Billing Cycle (the "Statement Date"), in the following way:
**a. Parts of the Account.** For the purposes of assessing interest, each part of the Account will be calculated separately. Parts may be called "Transaction Types" on the billing statements.
**(i) Standard Purchases.** All Standard Purchases and any other balances that are moved to the Standard Purchases part of the Account will be a single part. At your option, purchases subject to an Extended Grace Period may be treated as separate parts.
**(ii) Promotional Purchases.**

Promotional Purchases while subject to different Promotional rates, terms, and Deferred Interest terms will be different parts.

- **Deferred Interest Purchases.** From time to time, you may offer Promotional Purchases with a Deferred Interest option. All purchases subject to the same rate, Deferred Interest terms and Expiration Date will be a single part; at your option, you may consider any Deferred Interest Purchase to be a separate part, or may consider Deferred Interest Purchases from different Merchants to be different parts. If I pay the balance on the Deferred Interest part (which is called the "Deferred Interest Balance") in full by the Expiration Date, you will not charge any interest for that part. You will calculate the interest for each Billing Cycle prior to the Expiration Date and disclose it on the Billing Statement as the Accrued Deferred Interest. If I do not pay the balance on a Deferred Interest part of the Account before the Expiration Date, you may charge my Account, in the Billing Cycle in which the Expiration Date occurs, interest on each Promotional Purchase from the date of each purchase (each "transaction date").

- **End of Promotional Terms.** If a part is subject to a special promotional rate or Deferred Interest term which ends as of a certain date ("Expiration Date"), I authorize you to move, on or after that date, the balance remaining in that part to the Standard Purchases part of the Account, and it will be subject to the repayment and interest terms for Standard Purchases.

**(iii) Installment Purchases.** Each Installment Purchase will be a part. If there is a balance owing on an Interest-free Installment Purchase after the End Date, I authorize you to move, on or after the End Date, that balance to the Standard Purchases part of the Account, and it will be subject to the repayment and interest terms for Standard Purchases.
**b. When the Interest begins.** The interest begins to accrue on the transaction date, except (i) interest does not accrue on any portion of a loan that I repay during the Grace Period for the loan, if a Grace Period is applicable to the loan; (ii) interest does not accrue during the Extended Grace Period, if applicable to that loan, **(iii)** interest will not be assessed if the conditions in the following paragraph are met, and (iv) interest does not accrue prior to the End Date on an Interest-free Installment Purchase.
**c. Assessing Interest.** You will not assess interest on Standard or Promotional Purchases during any Billing Cycle in which my payments and credits on or before the Payment Due Date reduce the outstanding balance for Standard and Promotional Purchases (excluding Standard and Promotional Purchases I made during the Billing Cycle , excluding Deferred Interest Purchases, and excluding purchases subject to an Extended Grace Period) to zero or to a credit balance. This does not apply to a Deferred Interest Purchase , or to a Financed Installment Purchase.
**d. Grace Period.** Only loans for Standard Purchases and Promotional Purchases (other than a Deferred Interest Purchase) are eligible for a Grace Period. If a loan which is eligible for a Grace Period is made during a Billing Cycle in which no interest was assessed on the loan because of the preceding paragraph, you will not assess interest on any portion of the loan which I repay on or before the Payment Due Date in the next cycle. You will not assess any interest on a purchase that is subject to an Extended Grace Period before the last day of the Billing Cycle in which its Expiration Date occurs.
**e. How you will determine the balance on which the interest is computed.** You will compute the interest for each part on

the "Average Daily Balance" (including new purchases) for that part during the Billing Cycle. To get the Average Daily Balance for each part, you will take the beginning balance for each part each day and add any new loans and adjustments posted that day, including billed interest and billed Fees; then subtract any balances subject to an Extended Grace Period, any payments and any credits. This gives you the "Daily Balance." Then, you add up all the Daily Balances for the Billing Cycle for that part and divide the total by the number of days in the Billing Cycle. The result is the Average Daily Balance for that part. You will treat any Average Daily Balance which is a credit balance as zero.

**f. How you compute the interest.** You will compute the interest during the Billing Cycle for each part separately. For each part, you will multiply the Average Daily Balance for the Billing Cycle by the number of days in the Billing Cycle; then you will multiply the product by the Daily Periodic Rate in effect for that part during that Billing Cycle. The result is the interest for that part. You will then add up the interest for all the parts, to get the interest for the Account.

**g. Minimum Interest Charge.** If the Daily Balance of any part (excluding any balance on a Deferred Interest Purchase, prior to its Expiration Date, any purchase subject to an Extended Grace Period, and any Interest-free Installment Purchase part ), on the last day of a Billing Cycle (the Statement Date), is greater than zero, and if the interest for the Billing Cycle is greater than zero but less than $2.00, you may assess a Minimum Interest Charge (which will be shown on the billing statement as a fee called a "Minimum Interest Charge") of $2.00 for the Billing Cycle.

**h. Rate of Interest.** You will compute the interest on the Standard, Promotional and Financed Installment Purchases parts using the Daily Periodic Rate of 0.05477%. This corresponds to the **ANNUAL PERCENTAGE RATE** of **19.99%**. However, if you have disclosed a special promotional rate at the time you made the special offer, according to law, you will compute the interest on the Promotional Purchases parts using that special promotional rate.

**10. FEES.** I agree to pay the following Fees, as applicable. I agree that you may allocate any Fee to the Standard Purchases part of the Account.
**a. Penalty Fees.**
**(i) Late Payment Fee.** You will charge me a Late Fee for each month the Minimum Payment is not paid in full by its Payment Due Date. The amount of the late fee is disclosed in the Important Disclosures.
No Late Fee will be due if the reason the Payment is late is either:
(A) attributable to a Late Fee assessed on an earlier payment; or
(B) because, after default, the entire balance on this Account is due.
**(ii) Return Check Fee.** You will charge me a fee of $25.00 if my payment on this Account is made with a check, including a draft, order or other instrument that is returned by a drawee for "not sufficient funds" in the account on which the check is written. You will not charge the service charge, however, if you redeposit the check and it is paid.
**b. Fee for providing a copy of billing statement.** Unless you are required by law to provide me with a copy of a billing statement for a Billing Cycle other than the current Billing Cycle, I agree to pay you a fee of ten dollars ($10.00) per billing statement if I request a copy.

**11. MINIMUM PAYMENT DUE.** The Minimum Payment will be due each Billing Cycle, on or before the Payment Due Date. The amount of the Minimum Payment Due will be the sum of the Monthly Plan Payments due on each Installment Purchase part plus the payment due for the revolving parts plus any amounts past due from previous Billing Cycles.
**a. Revolving Parts.** The payment due for the revolving parts will be the greatest of (A) $10.00; or (B) 3% of the sum of the balances on the revolving parts (excluding any balance on a no payments for 6 months (or 9 months or 12 months, as applicable) purchase prior to its Expiration Date, and excluding any balance subject to an Extended Grace Period), on the last day of the Billing Cycle; or (C) 1% of the sum of the balances on the revolving parts (excluding any balance on a no payments for 6 months (or 9 months or 12 months, as applicable) purchase prior to its Expiration Date , and excluding any balance subject to an Extended Grace Period), on the last day of the Billing Cycle plus any interest assessed on the Account in that billing cycle (excluding any accrued interest on a Deferred Interest Purchase that has been billed in that billing cycle), plus any Late Fees and Other Fees assessed on the Account in that billing cycle. The payment will be rounded down to the next whole dollar.
**b. Installment Parts.** The Monthly Plan Payment due for each Installment Purchase which has not reached its End Date and on which a balance is outstanding will be the installment payment amount I agree to when I make an Installment Purchase. The Monthly Plan Payments for an Installment Purchase will be calculated so that they are substantially equal over the term of the Installment Purchase. In no event, however, will the Monthly Plan Payment due for any Installment Purchase be greater than the outstanding balance due on that part of the Account. The Monthly Plan Payment due on the End Date may be more or less than the others, because it will be adjusted as necessary to pay the actual balance and accrued interest owing on the End Date.

**12. PAYMENT APPLICATION.** You will use each payment in the amount of the Minimum Payment Due or less, when I am not in default, first to pay billed Monthly Plan Payments on the Installment Purchases (in any order you choose), then billed interest, then billed Fees, then the principal balance of the revolving parts (in any order you choose), and then any other amounts due. **However, if I have a balance on a Deferred Interest Purchase, during the two Billing Cycles immediately preceding the Expiration Date, you may use the payment first to pay billed Monthly Plan Payments on any Installment Purchases (in any order you choose) and then to pay the balance on any Deferred Interest Purchases, (in any order you choose).**

**13. PREPAYMENT.** If I pay an amount greater than the Minimum Payment Due in any Billing Cycle, the amount in excess of the Minimum Payment Due is a "prepayment." A prepayment will not affect the way you calculate the amount of the next Minimum Payment, and I will nevertheless make the Minimum Payment the next Billing Cycle. **I MAY MAKE PREPAYMENTS IN ANY AMOUNT AND MAY PAY THE ENTIRE BALANCE OR ANY PART OF IT AT ANY TIME PROVIDED THAT I PAY AT LEAST THE MINIMUM PAYMENT DUE IN EACH BILLING CYCLE WHEN IT IS DUE.** If I make a prepayment, you will use the prepayment to pay the balances starting with the balance with the highest interest rate (in any order you choose), then the

balances with the next highest interest rate (in any order you choose), and so forth. However, if I have a balance on a Deferred Interest Purchase, and I make a prepayment during the two Billing Cycles immediately preceding the Expiration Date, you will use the prepayment first to pay the balance on the Deferred Interest Purchase, starting with the balance subject to the highest interest rate.

**14. BILLING STATEMENTS AND CREDIT BALANCES.**
**a.** You will provide me with a billing statement for each Billing Cycle in which:
**(i)** You impose interest to this Account; or
**(ii)** The New Balance is more than $1.00 (whether a credit or debit balance).
**(iii)** I understand that you may provide me with electronic billing statements only and that I can elect to receive paper statements by logging in to www.billmelater.com.
**(iv)** I agree to notify you in writing of any errors in the billing statement within 60 days from the date it is provided. I agree to examine the billing statement and to notify you in writing, immediately, of any purchases which were not made or authorized by me. You need not provide a billing statement to me if you deem this Account uncollectible or if delinquency collection proceedings have been started.
**b.** If the Account has a credit balance in excess of $1.00, you will refund the credit balance to me as required by law. I authorize you to make the refund electronically or using an ACH, (i) if I made the payment which caused the credit balance electronically or using an ACH, or (ii) if I typically make payments on this Account electronically or using an ACH.

**15. DEFAULT.** I will be in default if any of the following happen:
**a.** If I fail to pay any Minimum Payment Due on or before the Payment Due Date.
**b.** If I fail to keep any promise or perform any duty in this Agreement, or in any other loan or agreement with you.
If default occurs, you will have no duty to make loans or advances from this Account and this Account will be Terminated. You may refuse to make any new loans and may cancel any approved loans from the Account for any Purchase or transaction that has not yet appeared on a billing statement sent to me. This may happen without any prior notice to me. If you choose, at your sole option, to make new loans from this Account after default, I agree that you may charge those loans to this Account. In addition, if a default occurs, all amounts which I owe under this Agreement shall be due and payable immediately, at your option (subject to any applicable law to the contrary). The other provisions of this Agreement will continue to apply to this Account. If you get a judgment after default and/or if I am a debtor in an action filed by or against me under the Bankruptcy Code, unless prohibited by applicable law, the rates of interest applicable to this Account will continue to apply to the balances on this Account. A default under this Agreement is a default under every other account or loan which I have with you.

**16. TERMINATION OF THE ACCOUNT.**
**a.** In addition to Termination by default, you may Terminate this Agreement at any time and for any reason subject to the requirements of applicable law.
**b.** I can terminate my Account by sending written notice to the address on the billing statement.
**c.** If there is no debit or credit on this Account for twelve (12) consecutive months, you may terminate this Account without notice to me.
**d.** After Termination, I will not be able to make new purchases on this Account. Termination under this paragraph will not affect any purchase which complies with this Agreement and which was made before the date of the Termination notice. If you choose, at your sole option, to allow purchases after you have Terminated this Account (whether or not I have given you notice Terminating this Account), I agree that you may charge those purchases to this Account. After Termination under this paragraph, balances will continue to accrue interest until paid in full and I agree to pay the balance on this Account, the interest and all other amounts due in accordance with the terms of this Agreement. All other provisions of this Agreement will continue to apply.

**17. YOUR LIABILITY.** You have no responsibility for the failure of any Merchant to accept payment using the Bill Me Later Payment System. Your liability, if liability is provided under applicable law, for a wrongful failure to make a loan on this Account is limited to my actual damages. Failure to make a loan for any reason as provided under the terms of this Agreement will not be wrongful.

**18. AMENDMENT OF THIS AGREEMENT.** You may amend this Agreement from time to time, in any respect by giving me written notice where required by law. An amendment may change something in this Agreement (for example, the rate of interest on any or all the parts), add something new or take something out. Amendments will apply to outstanding balances and new loans, except (i) an increase in the APR will apply to new loans made more than 14 days after written notice is mailed, (ii) as otherwise indicated in the written notice or (iii) as otherwise provided by applicable law. This Agreement, except when amended in accordance with this Agreement, is the final expression of the Agreement between us and may not be contradicted by evidence of any alleged oral agreement.

**19. REMEDIES CUMULATIVE.** Your remedies under this Agreement shall be cumulative and not alternative.

**20. DELAY IN ENFORCEMENT**. You can delay enforcing any of your rights under this Agreement without losing them. Any waiver by you of any provision of this Agreement will not be a waiver of the same or any other provision on any other occasion.

**21. ASSIGNMENT.** I may not assign or otherwise transfer my rights and privileges under this Agreement, or delegate my obligations to repay amounts I owe to you. Any attempt to assign or delegate will be void and of no effect. You may assign any and all of your rights under this Agreement at any time without my consent. Any person, company or bank to whom you assign

this Agreement shall be entitled to all of your rights under this Agreement. None of my rights or obligations shall be affected by such assignment.

**22. COMMUNICATIONS CONCERNING DISPUTED DEBTS. ALL COMMUNICATIONS BY ME TO YOU CONCERNING DISPUTED DEBTS, INCLUDING AN INSTRUMENT TENDERED AS FULL SATISFACTION OF THE ACCOUNT, WILL BE SENT TO: Bill Me Later, P.O. Box 5018, Timonium, MD 21094.**

**23. CREDIT INVESTIGATION AND REPORTING.** I authorize you to make or have made any credit, employment and investigative inquiries you deem appropriate related to this Account and the collection of amounts owed on this Account. I agree that you have the right to obtain a credit report in connection with your review of my application and periodically, during the term of this Account, as you deem reasonably necessary to maintain and collect this Account. I authorize you to answer any questions about your experience with me related to this Account and to report that experience to credit reporting agencies.

**24. NOTICES AND CUSTOMER SERVICE, COMMUNICATIONS BETWEEN US; CONSENT TO ELECTRONIC COMMUNICATIONS AND MONITORING AND RECORDING.** I may send written notices, correspondence, inquiries and questions concerning my Account to you at Bill Me Later, PO Box 2394, Omaha, NE 68103-2394. I may also call your customer service department at 1-866-528-3733. You may use any means of communication to contact me for any lawful purpose (including debt collection). Such means of communication may include, but are not limited to, postal mail, telephone, e-mail, text message or other technology, even if I am charged for the contact. I am responsible for any charges for contacting me that may be billed to me by my communications carrier. You may contact me at any address (including any e-mail or text message address) or telephone number (including any cellular telephone number or landline number that is later ported to a cellular telephone) that I give you or from which I call you. You may monitor, tape or electronically record my telephone calls with you, including any calls with your customer service department, collection department and any other department. You may contact me using an automatic dialing and announcing device that may play recorded messages. I understand and agree that by providing you with a cellular telephone number, I consent to receive calls at that number by an automatic dialing and announcing device or recorded messages. No contact from you will be deemed unsolicited. I may contact your customer service department to ask that you not contact me by using any one or more particular methods or technologies.

**25. GOVERNING LAW , CONSTRUCTION AND DISPUTES.**
**a. Governing Law and Construction.** This Agreement has been accepted by you in the state of Utah, and all loans will be extended by you in the state of Utah. Regardless of the state of my residence or the place where the Merchant is located, I agree that the provisions of this Agreement relating to interest, charges and fees shall be governed by federal law and construed in accordance with federal law and, as made applicable by federal law, the law of the state of Utah. Other terms and provisions shall be governed by and construed in accordance with the law of the state of Utah, without regard to principals of conflicts of law, except to the extent preempted, superseded, or supplemented by federal law.
**b. Forum for Disputes.** Except as otherwise agreed by the parties, I agree that any claim or dispute I may have against you must be resolved by a court located in Utah. I agree to submit to the personal jurisdiction of the courts located within Utah for the purpose of litigating all such claims or disputes.
**c. Improperly Filed Litigation.** All claims I may bring against you must be resolved in accordance with section 25 of this Agreement. All claims filed or brought contrary to section 25 shall be considered improperly filed and a breach of this Agreement. Should I file a claim contrary to section 25, you may recover attorneys' fees and costs (including in-house attorneys and paralegals) up to $1,000.00 USD, provided that you have notified me in writing of the improperly filed claim, and I have failed to promptly withdraw the claim.

**26. SEVERABILITY.** If any provision of this Agreement is held to be invalid or unenforceable, such determination shall not affect the validity or enforceability of the remaining provisions of this Agreement.

**27. BORROWER'S BILLING RIGHTS - KEEP THIS NOTICE FOR FUTURE USE.**
Credit Card Purchases means purchases made with this Account. This notice is required by federal law. In this notice, "you" and "your" mean the Borrower. "We" and "our" mean the Lender. This notice tells you about your rights and our responsibilities under the Fair Credit Billing Act.

**What To Do If You Find A Mistake On Your Statement**
If you think there is an error on your statement, write to us at:

  Bill Me Later, P.O. Box 5018, Timonium, MD 21094.

In your letter, give us the following information:

- *Account information*: Your name and account number.
- *Dollar amount*: The dollar amount of the suspected error.
- *Description of problem*: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us:

- Within 60 days after the error appeared on your statement.
- At least 3 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors *in writing*. You may call us or email us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

**What Will Happen After We Receive Your Letter**
When we receive your letter, we must do two things:
1. Within 30 days of receiving your letter, we must tell you that we received your letter. We will also tell you if we have already corrected the error
2. Within 90 days of receiving your letter, we must either correct the error or explain to you why we believe the bill is correct.
While we investigate whether or not there has been an error:

- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

After we finish our investigation, one of two things will happen:

- *If we made a mistake* : You will not have to pay the amount in question or any interest or other fees related to that amount.
- *If we do not believe there was a mistake* : You will have to pay the amount in question, along with applicable interest and fees. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe .

If you receive our explanation but still believe your bill is wrong, you must write to us within *10 days* telling us that you still refuse to pay. If you do so, we cannot report you as delinquent without also reporting that you are questioning your bill . We must tell you the name of anyone to whom we reported you as delinquent, and we must let those organizations know when the matter has been settled between us.
If we do not follow all of the rules above, you do not have to pay the first $50 of the amount you question even if your bill is correct.

**Your Rights If You Are Dissatisfied With Your Credit Card Purchases**
If you are dissatisfied with the goods or services that you have purchased with your credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the purchase.
To use this right, all of the following must be true:
1. The purchase must have been made in your home state or within 100 miles of your current mailing address, and the purchase price must have been more than $50. (Note: Neither of these are necessary if your purchase was based on an advertisement we mailed to you, or if we own the company that sold you the goods or services.)
2. You must have used your credit card for the purchase. Purchases made with cash advances from an ATM or with a check that accesses your credit card account do not qualify.
3. You must not yet have fully paid for the purchase.
If all of the criteria above are met and you are still dissatisfied with the purchase, contact us *in writing or electronically* at:

   Bill Me Later, P.O. Box 5018, Timonium, MD 21094

While we investigate, the same rules apply to the disputed amount as discussed above. After we finish our investigation, we will tell you our decision. At that point, if we think you owe an amount and you do not pay, we may report you as delinquent.

## Bill Me Later® Privacy Policy

This Privacy Policy is provided by CIT Bank, Salt Lake City, Utah ("CIT Bank") and Bill Me Later, Inc. (" together" "we," "us" or "our").  CIT Bank, Salt Lake City, Utah is the Lender of your Bill Me Later loan or credit account (your "Account").  Your Account is operated and serviced by Bill Me Later, Inc., a Delaware corporation. Bill Me Later, Inc. will become the company to which you will owe the amounts due on your account. Unless we define capitalized terms in this Privacy Policy, they have the same meaning as those terms in the agreement between us and you that contains the terms and conditions of your Account.

This Privacy Policy applies to CIT Bank and Bill Me Later, Inc. while you have a Bill Me Later® Account or owe any amounts charged to your Account. Please read this Privacy Policy carefully and keep it for your records. If you have another customer relationship with either CIT Bank or Bill Me Later, Inc. (or Bill Me Later) the Privacy Policy governing that relationship may be different.

**Our Commitment: Protecting the privacy of the nonpublic personal information ("Information") you share with us is one of our top priorities. We value your trust and want you to understand what information we collect, how we keep it safe, and how we use it.**

This Privacy Policy includes examples of the types of Information we collect and the kind of companies with which we may share such information. We give you these examples to help you understand our Privacy Policy; they are not a complete listing of our Information collection, use and sharing practices.

You may have other privacy rights in some states, such as Vermont and California. To the extent state laws apply, we will comply with them when we share Information about you. For example, if your Account has a Vermont address, we will not share credit report information about you with our related family of companies unless you permit us to do so or as otherwise permitted by law.

Please note, if you provide information to other companies from whom you purchase products and services using your Account, this Privacy Policy will not apply to the information those companies collect. Those companies' privacy policies will govern how they collect, use and share information that you allow them to access.

### Collection of Information

In order to give you products and services you request, to service your Account, and as we believe is helpful to decide your eligibility for products or services, we collect the following types of Information about you from the following sources:

- Information we receive from you (or is given to us on your behalf) during the application process and on forms, such as your name, address, telephone number, social security number, email address, employer and income;
- Information about your transactions with us or others, such as Account balance, payment history, and where and how you use your Account; and
- Information we may get from a consumer reporting agency, such as your credit score and credit history.

### Information We May Share and With Whom We May Share Information

**We do not sell your Information to any outside organization without your consent. We do not disclose your Information to any of our related companies or outside organizations other than as described in this Policy.**

- **Disclosures Between Us.** Bill Me Later, Inc. may disclose all the Information described above to CIT Bank and CIT Bank may disclose all the Information described above to Bill Me Later, Inc. as permitted by law.
- **Disclosures by Bill Me Later, Inc. Among Companies in Its Corporate Family.** Bill Me Later, Inc. may disclose all the Information described above among companies within its corporate family (related or affiliated companies), which may include financial institutions (such as banks or finance companies) or nonfinancial institutions (such as online retail companies).
- **Additional Disclosures Permitted by Law.** We may share all of the Information described above, as permitted by law. For example, we may disclose Information to related or affiliated, companies that perform services for us, such as taking customer calls, processing your Account, preparing your Account statements, processing your payments and providing software for us. We also may disclose Information to unrelated companies that perform such services for us. We may share Information to answer questions from law enforcement agencies or state and federal banking regulators, or to respond to a subpoena or protect against fraud. We may also share Information with your consent.
- **Disclosures for Joint Marketing and Servicing.** We may share all of the Information described above with companies that provide marketing services for us (for example, affiliates and unrelated companies, including financial companies such as banks and insurers; non-financial companies, such as direct marketers and mail houses; and others,) or with other financial companies, such as insurers, banks and securities broker-dealers with which we have joint marketing agreements.

### Information Regarding Former Customers
We share Information about former customers with inactive or closed Accounts only as described in this Privacy Policy.

### Our Security Procedures
We limit use of Information about you to those employees, agents or contractors who we believe have a legitimate business purpose to access such Information. We maintain physical, electronic and procedural safeguards that comply with or exceed federal standards to keep Information about you safe. We require companies working for us to protect Information. They agree to use it only to provide the services we ask them to perform for us.

**Changes to This Privacy Policy**
We may change or replace this Privacy Policy at any time. If we make material changes, we will provide current customers with a revised notice that describes our new practices or a link to the new privacy policy.

TCBML219.990210